IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

DAVID CONTRERAS, SR.,            )
                                 )       2 CA-CV 2006-0147
            Plaintiff/Appellant, )       DEPARTMENT B
                                 )
        v.                       )       O P I N I O N
                                 )
WALGREENS DRUG STORE #3837, an   )
Arizona corporation              )
                                 )
            Defendant/Appellee.  )
                                 )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20051156

Honorable Leslie Miller, Judge

AFFIRMED

Vernon E. Peltz                                                Tucson
                                                  Attorney for Plaintiff

Campbell, Yost, Clare & Norell, P.C.
  By Martin P. Clare                                          Phoenix
                                    Attorneys for Defendant/Appellee

B R A M M E R, Judge.

¶1        Appellant David Contreras appeals from the trial court's grant of appellee

Walgreens Drug Store's motion for summary judgment. Contreras filed a negligence action

to recover damages for injuries he had sustained when he fell on Walgreens' premises,

slipping on a liquid spilled on the floor. The trial court determined Contreras had failed to

present sufficient evidence that Walgreens had had constructive notice of the dangerous condition or that spills occurred with sufficient regularity that proof of such notice was not required. Finding no error, we affirm.

**Factual and Procedural Background**

¶2 On review of a summary judgment, we "view the evidence in the light most favorable to the party opposing the motion for summary judgment and draw all inferences fairly arising from the evidence in that party's favor." *Phoenix Baptist Hosp. & Med. Ctr., Inc. v. Aiken*, 179 Ariz. 289, 293, 877 P.2d 1345, 1349 (App. 1994). In April 2003, Contreras, an employee of a liquor distribution company, fell while making a delivery to Walgreens' store. He slipped on a slimy blue substance while "rolling his two wheel[led] dolly of merchandise onto the sales floor."

¶3 Contreras sued Walgreens in February 2005, alleging it had "failed to maintain [its floors] in a safe condition" and "knew, or should have known, of a dangerous condition [on] the floor . . . of the [store], and . . . allowed the dangerous condition to exist without regard to the safety and well being of the general public and business invitees." Walgreens filed a motion for summary judgment, arguing that Contreras could not "establish [actual or constructive] notice of the [hazardous] condition by Walgreens." In his opposition to the motion, Contreras argued he was not required to show notice because Walgreens "could reasonably anticipate that a dangerous condition would regularly arise in the course of [its] business operations," relying on the "mode-of-operation" rule our supreme court described in *Chiara v. Fry's Food Stores of Arizona, Inc.*, 152 Ariz. 398, 733 P.2d 283 (1987).

2

¶4 Store manager James McDougall testified in his deposition that the store was open twenty-four hours a day and is "slightly above average" in size because "most of the [other Walgreens] stores don't have liquor departments in [th]em." He agreed "things [that] would end up on the floor, materials or liquids or products coming from the shelves," would have to be cleaned up "from time to time." He stated that "a couple of spills [of liquids] a week that required cleaning . . . would probably be typical," but agreed spills were "not something that [were] repetitive in nature or usual in nature . . . [or] something that [he] would expect."

¶5 The trial court granted Walgreens' motion, determining Contreras had "presented no evidence that Walgreens' employees either caused or knew of the dangerous condition" nor any evidence "as to the length of time that the spill existed." The court also stated that, although "[t]he [store] manager testified that some type of spill would occur in the store about two times per week," "[t]here is no evidence as to what type of spills occurred or if they occurred in any particular location." The court concluded that, "[b]ased on the lack of specificity as to types and locations of spills and the lack of regularity with which they occurred, [Contreras had] failed to demonstrate that the mode of operation rule applies in the present case." This appeal followed.

**Discussion**

¶6 A trial court properly grants summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c), 16 A.R.S., Pt. 2; *Orme Sch. v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004

3

(1990). "On appeal from a summary judgment, we must determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in applying the law." *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 8, 965 P.2d 47, 50 (App. 1998). A trial court should only grant a motion for summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008.

¶7        A business "has an affirmative duty to make and keep [its] premises reasonably safe for customers." *Chiara*, 152 Ariz. at 399, 733 P.2d at 284. In slip-and-fall cases, however, "the mere occurrence of a fall on the business premises is insufficient to prove negligence on the part of the proprietor." *Preuss v. Sambo's of Ariz., Inc.*, 130 Ariz. 288, 289, 635 P.2d 1210, 1211 (1981). Typically, a plaintiff must prove that the dangerous condition causing the fall was a result of the defendant's acts or that the defendant had actual or constructive knowledge of the condition. *Id.* Constructive notice is shown by proof "'the condition existed for such a length of time that in the exercise of ordinary care the proprietor should have known of it and taken action to remedy it.'" *Chiara*, 152 Ariz. at 400, 733 P.3d at 285, *quoting Walker v. Montgomery Ward & Co.*, 20 Ariz. App. 255, 258, 511 P.2d 699, 702 (1973). Contreras does not argue that he presented sufficient evidence of actual or constructive notice to avoid summary judgment.

¶8        Recognizing that "[a] person injured in a [self-service business] will rarely be able to trace the origins of the accident," Arizona has adopted the mode-of-operation rule.

*Id.* That rule "looks to a business's choice of a particular mode of operation and not events surrounding the plaintiff's accident. Under the rule, the plaintiff is not required to prove notice if the proprietor could reasonably anticipate that hazardous conditions would regularly arise."[1] *Id.* This court has defined "regularly" as "'[c]ustomary, usual, or normal'" for purposes of the mode-of-operation rule. *Borota v. Univ. Med. Ctr.*, 176 Ariz. 394, 396, 861 P.2d 679, 681 (App. 1993), *quoting American Heritage Dictionary* 1041 (2d coll. ed. 1982) (alteration in *Borota*). Contreras argues the rule applies here, and the trial court erred by granting Walgreens' motion for summary judgment "when the undisputed facts indicate[] that Walgreens is a self-service store and that spills regularly occurred two times a week at the store."[2]

---

[1]The mode-of-operation rule is not limited to specific types of self-service establishments. *See Chiara v. Fry's Food Stores of Ariz., Inc.*, 152 Ariz. 398, 401, 733 P.2d 283, 286 (1987) ("No element of the mode-of-operation rule . . . limits its application to produce or pizza.").

[2]Walgreens argues "the trial court should not have even considered the mode of operation rule" because Contreras did not timely "disclose[] the . . . rule as a theory of liability" in his initial disclosure statement, in violation of Rule 26.1, Ariz. R. Civ. P., 16 A.R.S., Pt. 1. Walgreens argued below that the trial court "should reject [Contreras's] argument out of hand based upon his failure to identify [the mode-of-operation rule as a theory of recovery]." The trial court instead ruled on the merits. Assuming, without deciding, that the mode-of-operation rule is a "theory of liability" that must be disclosed and that Contreras's disclosure was not timely, we review the trial court's decision to not impose discovery sanctions for an abuse of discretion. *See Jimenez v. Wal-Mart Stores, Inc.*, 206 Ariz. 424, ¶ 5, 79 P.3d 673, 675 (App. 2003). Walgreens makes no argument and cites no authority suggesting the trial court abused its discretion. *See* Ariz. R. Civ. App. P. 13(a)(6), 17B A.R.S. Moreover, Walgreens has not described what prejudice it suffered from Contreras's arguably untimely disclosure. *Cf. Zimmerman v. Shakman*, 204 Ariz. 231, ¶ 14,

¶9    McDougall stated that "a couple" of liquid spills occurred a week. Contreras argues that, "[w]hen spills occur twice a week, those spills are certainly regularly occurring" within the meaning of the mode-of-operation rule. It is insufficient, however, to demonstrate that spills of some kind regularly occur; the business must be able to reasonably anticipate that a condition hazardous to customers will regularly occur. *Chiara*, 152 Ariz. at 400, 733 P.3d at 285. Contreras's evidence does not permit that inference; he provided no evidence the liquid from spills occurring twice a week necessarily reached the floor nor that those spills occurred in the area of the store accessible to customers. Thus, although his evidence might permit a reasonable jury to conclude spills occur with some regularity, it does not permit the inference such spills regularly created a hazardous condition.

¶10    In *Chiara*, our supreme court applied the rule to a supermarket in which a customer slipped on creme rinse that had come from a sealed bottle. 152 Ariz. at 401, 733 P.2d at 286. There, a store clerk testified: "Let's put it this way: I can't say I remember it [the creme rinse Chiara had slipped on]—cleaning up any exact one thing. There's lots of things I have to clean up in the store. It's not the cleanest place." *Id.* (Alteration in *Chiara*). The court held "that a jury should determine if [the defendant] reasonably could have anticipated that sealed bottles regularly were opened and spilled." *Id.* Contreras argues McDougall's testimony is "very similar" to the clerk's testimony in *Chiara*. We disagree. McDougall testified about spills occurring in the store without suggesting whether those

62 P.3d 976, 980 (App. 2003) (trial court should consider prejudice to other party when determining sanctions for discovery violation). Accordingly, we do not address this argument further.

spills were necessarily hazardous or occurred in areas accessible to customers. In contrast, the clerk's testimony in *Chiara* strongly suggested he was describing spills similar to the one that had caused Chiara to fall, that is, hazardous spills occurring in public areas of the store, because he prefaced his comment by saying he could not remember the details of that particular spill. *Id.* McDougall's testimony does not support a similar inference.

¶11 Division One of this court applied the rule in *Bloom v. Fry's Food Stores, Inc.*, 130 Ariz. 447, 448, 452, 636 P.2d 1229, 1230, 1234 (App. 1981), to a plaintiff who had slipped on a grape in the produce section of a grocery store. A store employee had testified the "produce section was one of the 'more dangerous' aisles in the store." *Id.* at 449, 636 P.2d at 1231. This testimony clearly allowed the inference the spills regularly produced a hazardous condition to customers. Similarly, in *Tom v. S. S. Kresge Co.*, 130 Ariz. 30, 33, 633 P.2d 439, 442 (App. 1981), this court applied the rule to a defendant that "provided soft drinks for its patrons" so customers "could enjoy them while shopping." And the accident report on the plaintiff's fall stated the "'floor was wet from a spill . . . [probably a] soft drink.'" *Id.* In *Rhodes v. El Rancho Markets*, 4 Ariz. App. 183, 184-85, 418 P.2d 613, 614-15 (1966), this court applied the rule to a plaintiff who had slipped on lettuce in the produce department of a supermarket. We noted the store employees spent more time than in other parts of the store "sweeping and picking up in the produce department because of the nature of the 'stuff' that falls to the floor" and that employees "constantly picked things up" in that area. *Id.* at 184, 418 P.2d at 614.

¶12      The holdings in these cases demonstrate that application of the mode-of-operation rule focuses not on whether a spill occurs at some interval, be it twice a week or twice a month, but on whether spills create a condition hazardous to customers with sufficient regularity to be considered customary, usual, or normal. *See Borota*, 176 Ariz. at 396, 861 P.2d at 681. The fact that spills occurred twice a week in a store open twenty-four hours a day, without any other evidence about the location of the spills or the hazard they present to customers, is not sufficient for a reasonable jury to conclude that a hazardous condition resulting from those spills would regularly occur. *See Chiara*, 152 Ariz. at 400, 733 P.3d at 285, *see also Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008. We therefore affirm the trial court's grant of Walgreens' motion for summary judgment.

_____
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:


_____
PETER J. ECKSTRSTOM, Presiding Judge



_____
PHILIP G. ESPINOSA, Judge